IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FRANK MCCONNELL MAYFIELD III, PLAINTIFFS
On Behalf of Himself and All Others
Similarly Situated

v. CIVIL NO. 5:26-cv-05017

WASHINGTON COUNTY, ARKANSAS;
ARK WRECKING COMPANY OF OKLAHOMA, INC.;
COM-CRETE, LLC;
COMFORT SYSTEMS USA (ARKANSAS), INC.;
CORNERSTONE DETENTION PRODUCTS, INC.;
GRANT GARRETT EXCAVATING, INC.;
HARNESS ROOFING, INC;
HIGHT JACKSON ASSOCIATES, P.A.;
MULTI-CRAFT CONTRACTORS, INC.;
NABCO MECHANICAL & ELECTRICAL, INC.;
NABHOLZ CONSTRUCTION CORPORATION;
NEW CENTURY COUNTER TOPS, INC.;
PAINT INNOVATORS, INC.;
PC HARDWARE, LLC;
RED DOT BUILIDINGS;
SMITH-DOYLE CONTRACTORS, INC.;
SPIRIT ARCHITECTURE GROUP, LLC;
STATE SYTEMS, INC.;
TRIMTECH, INC.;
US ASSURE INSURANCE SERVICES OF FLORIDA, INC.;
WALKER MASONRY & SONS, INC.;
WIL-SHAR, INC.;
WILJO INTERIORS OF ARKANSAS, LLC;
X, Y, Z, AND JOHN DOES 1-99 DEFENDANTS

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

The Motion to Dismiss filed by Separate Defendant Washington County, Arkansas (Washington County) (ECF No. 30) is before the Court for consideration, and the undersigned, having reviewed the Complaint along with the Motion, Plaintiff's Response and Defendant's Reply, finds the Motion must be granted and Plaintiff's Complaint dismissed.

This is another case concerning Washington County, Arkansas' use of federal funds meant to combat the devastating effects of the COVID-19 pandemic. The history of those funds and Washington County's receipt of them was previously explained in a 2025 decision by Chief U.S. District Judge Timothy L. Brooks[1] which is paraphrased here: The American Rescue Plan Act passed by Congress in 2021 established the Coronavirus State and Local Fiscal Recovery Funds Program, which authorized the United States Treasury Department to distribute $350 billion to state, territorial, local and tribal governments to assist them in responding to the economic and public health impacts of the COVID-19 global pandemic. *See* 42 U.S.C. § 603(c); 42 U.S.C. §§ 802 & 803. The Coronavirus Local Fiscal Recovery Fund ("CLFRF") allocated $65.1 billion to be shared among the various counties of the United States according to population. *See* 42 U.S.C. § 803(b)(3). Each county was authorized to receive a payment divided into two equal payments, the first of which was to be paid in mid-2021 and the second in mid-2022. *See id.* § 803(b)(7). Washington County received a total of $46 million with some federal restrictions. 31 C.F.R. Part 35, 42 U.S.C. § 603(c); 42 U.S.C. §§ 802 & 803.

In his Complaint, Plaintiff Frank McConnell Mayfield, III, alleges that Washington County committed an illegal exaction of public funds in violation of the Arkansas Constitution, art. 16, § 13. (ECF No. 3, ¶¶ 1, 29). Plaintiff alleges that, following receipt of the CLFRF funds, and on December 19, 2022, Washington County enacted Ordinance Nos. 2022-123, and 2022-124, which effectuated a transfer of money from the County's American Rescue Plan Act Fund to other County accounts to pay for an expansion of the Washington County Detention Center. (ECF No. 3, ¶¶ 33-35). Washington County thereafter retained contractors to expand the detention center; many of these contractors are now named as defendants in Plaintiff's Complaint. (ECF No. 3, ¶ 37). With respect to those expenditures, Plaintiff alleges that use of COVID-19 funds was prohibited by the CLFRF and violated its parameters in various ways, to-wit: That using the funds to expand the detention center was not a

[1] *See The Liberty Initiative, Inc., d/b/a Arkansas Justice Reform Coalition; and Susan Moore v. Washington County, Arkansas,* Case No. 5:24-CV-5120-TLB, Memorandum Opinion dated March 19, 2025 (ECF No. 32).

proportional response to mitigate or prevent COVID-19 (required by the CLFRF); that Washington County failed to properly consider the expected capital expenditure of the detention center project or how it was intended to address public health; that Washington County failed to balance the effectiveness and costs of the proposed capital expenditure against alternatives and demonstrate that the capital expenditure is superior; that an expansion of the detention center was not a proportional response to COVID-19 consistent with the American Rescue Plan; and that the expansion was more costly than alternatives that would have been equally or more effective in decreasing the spread of COVID-19. (ECF No. 3, ¶¶ 38-43). Plaintiff seeks injunctive relief, asking for Washington County to be enjoined from using these federal American Rescue Plan funds to expand the detention center, and seeking disgorgement from each of the contractors who has accepted these federal funds for work performed at the detention center expansion. (ECF No. 3, ¶¶ 44-47).

Washington County seeks dismissal of the Complaint on the grounds that an illegal exaction claim requires misuse of tax funds, and this District Court has previously held the federal CLFRF funds are not tax funds. Applying the doctrine of claim preclusion, Washington County alleges Plaintiff be estopped from arguing that these funds are tax funds, or alternatively, that Plaintiff's Complaint should be dismissed for the same reason – there is no question that these are not tax funds and thus, an illegal exaction claim cannot proceed. (ECF Nos. 30, 31).

Plaintiff responds, *inter alia*, that his Complaint sufficiently pleads the illegal exaction of public funds necessary for a common law injunction and further argues that any future federal recoupment of misappropriated CLFRF funds would be paid from Washington County's taxpayer funds, which would then constitute an illegal exaction. (ECF Nos. 47, 48).

In reply, Washington County rejects that Plaintiff has pled any basis for a common law injunction; contends the CLFRF funds are not tax funds or there is no allegation they were ever co-mingled with tax funds; and observes that Plaintiff has not pled any ongoing effort by the Treasury for disgorgement or recoupment. (ECF No. 53).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. (citing *Twombly,* 550 U.S. at 556). A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "are not entitled to the assumption of truth.") Instead, '[t]he complaint must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.*, 524 F. 3d 866, 870 (8th Cir. 2008).

Illegal-exaction lawsuits in Arkansas are authorized under article 16, section 13 of the Arkansas Constitution which provides, "Any citizen of any county, city, or town may institute suit on behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." *McCafferty v. Oxford American Literary Project, Inc.,* 2016 Ark. 75, *3. An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *Brewer v. Carter,* 365 Ark. 531, 231 S.W.3d 707 (2006). Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. *McCafferty*, 2016 Ark. at *3 (quoting *Sullins v. Cent. Ark. Water,* 2015 Ark. 29, 454 S.W.3d 727). According to the Arkansas Supreme Court, "[i]t is axiomatic that, before a public-funds type of illegal-exaction case will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent." *McCafferty*, at *3 (citing *Dockery v. Morgan,* 2011 Ark. 94, 380 S.W.3d 377); *see*

*also Chapman v. Bevilacqua*, 344 Ark. 262, 271 (2001) ("As this court noted in *Gipson v. Ingram*, 215 Ark. 812, 223 S.W.2d 595 (1949), a governmental subdivision use of funds not derived from state taxpayer monies is not subject to a challenge for unlawful disbursement."); *Ghegan & Ghegan, Inc. v. Weiss,* 338 Ark. 9, 991 S.W.2d 536 (1999) (A citizen's standing to bring a public-funds case is tied to his vested interest in ensuring that the tax money he has contributed to a state or local government treasury is lawfully spent.).

Exercising jurisdiction over this matter and applying either issue preclusion or the simple undisputed facts lead to the same place: The funds about whose use Plaintiff complains are not tax funds. In the words of Judge Brooks, "they are funds that the federal government bestowed upon Washington County to use in its discretion for COVID-19 relief efforts." *The Liberty Initiative, supra.* Because there is no private cause of action under the American Rescue Plan Act to remedy Plaintiff's claim that Washington County misused these federal funds, *Yaritz v. IRS,* 2023 WL 5756462, at *3 (D. Minn. April 26, 2023), Plaintiff seeks to proceed under the Arkansas Constitution. Unfortunately, Arkansas law provides the roadblock as the Supreme Court of Arkansas has been unequivocal that funds must be tax funds to have been illegally exacted in violation of the Constitution. *McCafferty, supra.* Plaintiff posits a novel theory concerning a hypothetical future U.S. Treasury recoupment which, if successful, would be paid with actual (future) Washington County taxpayer funds, and thus constitute an illegal exactment. Perhaps so. But the Court is not called upon to determine the viability of this theory, since Plaintiff's Complaint does not allege any ongoing or imminent federal recoupment efforts.

Plaintiff's Complaint "must allege facts, which, when taken as true, raise more than a speculative right to relief." *Benton v. Merrill Lynch & Co., Inc.,* 524 F. 3d at 870. Because Plaintiff alleges illegal exactment of "public funds" but the funds at issue are not "monies generated from tax

dollars or arising from taxation are being misapplied or illegally spent," Plaintiff's Complaint does not state a claim for illegal exactment under the Arkansas Constitution.

**IT IS THEREFORE ORDERED** and **ADJDUGED** that Defendant's Motion to Dismiss (ECF No. 30) be and is hereby **GRANTED** and this action **DISMISSED.**

**IT IS SO ORDERED** on this 15th day of September 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE